IN THE UNITED STATES DISTRICT COURT FOR THE

CENTRAL DISTRICT OF ILLINOIS

Springfield Division

**RECEIVED**

MAY - 2 2016

U.S. CLERK'S OFFICE
SPRINGFIELD, ILLINOIS

United States of America          |

      Plaintiff          |

v          | Case No 05-CR-30011

Kevin Johnson          |

      Defendant          |

**16cv4620**

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**FILED**

MAY 03 2016

DEFENDANT'S MOTION FOR JUDGMENT ON THE

PLEADINGS PURSUANT TO FED.R.CIV.P. 12(c)

     Comes Now the Defendant, Kevin Johnson, and he Moves
this Court for Judgment On The Pleadings Pursuant To
Fed.R.Civ.P.12(c).  In support, he states as follows:


Rule 41(g), In General

-----------------------


     Rule 41(g) furnishes a mechanism by which criminal
defendants can recover property which was seized by the
government.  United States v Stevens 500 F 3d 625 (7th Cir
2008).  Rule 41(g) can be used after criminal proceedings have
concluded "to recover the defendant's property when the
property is no longer needed."  United States v Sims 376 F3d
705 (7th Cir 2004), cert denied 543 US 1094, 125 S Ct 978, 160
L Ed 2d 908 (2005) citing Okoro v Callaghan 324 F3d 488 (7th
Cir 2002) cert denied 539 US 910, 123 S Ct 2265, 156 L Ed 2d

125 (2003). After a defendant has been convicted, a Rule 41(g) motion can be treated as opening a new civil equitable action. See United States v Shaaban 602 F 3d 877 (7th Cir 2010); United States v Howell 354 F 3d 693 (7th Cir 2004). Once the criminal proceedings have concluded, a six year statute of limitations applies. Sims. The Seventh Circuit has not determined whether this six years runs from the date of judgement, as in a rule 33 motion, or the conclusion of the direct appeal, as with a 28 USC 2255 proceeding, or whether or not it is jurisdictional.

A motion pursuant to Fed.R.Crim.P. 41(g) is similar to a common law replevin action. Okoro. The test of whether property should be returned is whether the government's retention of it is reasonable. In Re: The Search Of The Office of Ken Tylman 245 F 3d 978 (7th Cir 2001). The government "should be ordered to return any, and all, property, that does not have a demonstrable 'evidentiary value, and was not the fruit of a crime.'" In Re: Search of 2847 East Higgins Road, Elk Grove Village, IL, 390 F 3d 964 (7th Cir 2004). Particularly, the government has a burden to show a specific nexus between the property, and a continuing criminal investigation. Interstate Cigar Co v United States 928 F2d (7th Cir 1991) Property should be returned to a defendant as soon as the government realizes that it has no evidentiary value, and is not the fruit of a crime. In Re: Search of 2847 East Higgins Road, Elk Grove Village, Illinois 390 F3d 964 (7th Cir 2004).

Rule 41(g) Venue
-----------------

The government's objection to venue in this matter is governed by Fed.R.Civ.P. 12(b)(3). Fed.R.Civ.P.12 requires that "a motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed." Fed.R.Civ.P. 12(h)(1) provides that "improper venue is waived as a grounds for dismissal when not timely raised." Auto Mech. Local 701 Welfare & Pensions Funds v Vanguard Car Rental USA, Inc. 502 F3d 740 (7th Cir 2007). "Venue is primarily a matter of convenience of litigants and witnesses," and such matters of convenience "must be pleaded early" lest they be "waived, or, forfeited." Denver & Rio Grande W. R. R. Co v Brotherhood of R.R. Trainmen 387 US 556, 87 S Ct 1746, 18 L Ed 2d 954 (1967); Am Patriot Ins. Agency, Inc v Mut Risk Mgmt, Ltd, 364 F 3d 884 (7th Cir 2004).

In this case, the government failed to file an appropriate motion pursuant to Fed.R.Civ.P. 12(b)(3), and, instead, chose to file a response. By filing a responsive pleading, the government waived any objection to venue. Johnson objects to any change of venue in this matter.

Judgment On The Pleadings
--------------------------

Fed.R.Civ.P. 12(c) permits a party to move for judgment on the pleadings after the filing of both the

complaint and the answer. Brunt v Serv. Empl. Int'l. Union
284 F3d 715 (7th Cir 2002). The pleadings include the
complaint, the answer and, any written instruments attached as
exhibits. Fed.R.Civ.P. 10(c); Northern Ind. Gun & Outdoor
Shows v City of S Bend 163 F 3d 449 452 (7th Cir 1998). In
this case, the government agrees that there are no factual
issues in dispute. For this reason, this matter is ripe for
disposition.

Argument
----------

In the underlying case, ND Ill 14-cr-0390, Kevin
Johnson was charged with conspiring to, and, actually,
violating 18 USC 43, the Animal Enterprise Terrorism Act, by
vandalizing farm vehicles, fencing, and a barn, at the East
Fork Mink Ranch in Morris, Illinois. Johnson was sentenced to
22 months imprisonment and is set to be released from prison
May 25, 2016. There was no forfeiture order in the case, and
none of the seized items were introduced at sentencing.

In their response, the government has described no
potential nexus between any of the seized property and any
ongoing criminal investigation. Indeed, it would be hard to
construe one for most of the seized items. The seized
property is primarily comprised of mundane items, such as
roadmaps, a computer, clothing, personal papers, and the like.
These are the kinds of items that Johnson will have an
immediate need for as he is released from prison and attempts

to chart a new course in life. The government has not indicated that, if Johnson were to be tried on these charges as a result of some appeal, any of these items are either probative of the crime, or would likely be introduced as evidence. As these items have no demonstrable evidentiary value for any potential future proceeding, the court should find that the balance of equities weighs in Johnson's favor.

Further, Johnson has brought his direct appeal solely on the issue of the constitutionality of 18 USC 43. All other appellate issues have been waived. Should a reviewing court declare 18 USC 43 unconstitutional, the government would not have the option to try Johnson, as there would be no federal jurisdiction in this matter. Johnson's plea agreement allows him to only challenge his sentence pursuant to a motion under 28 USC 2255; thus, there is no possibility that Johnson may be tried as a result of any habeas motion, should his direct appeal be unsuccessful. For these reasons, even if the Court were to find, sua sponte, that some of the items had some potential evidentiary value before Johnson's conviction and sentencing, the Court cannot find that these items have any potential evidentiary value now. The United States has no reasonable expectation of ever conducting a proceeding in which these items would be introduced.

For the above reasons, this case is ready for disposition, without any further proceedings, or any transfer of venue. Because there is no factual dispute, the United States is not entitled to an evidentiary hearing. This Court

is as competent as the Northern District of Illinois to decide
the issues of law, and equity, and should order the seized
property returned to Johnson.

Respectfully Submitted,

Kevin Johnson #47353-424
Metropolitan Correctional Center
-- Chicago
71 Van Buren St
Chicago, IL 60605

CERTIFICATE OF SERVICE

I hereby certify that this Reply To The Government's
Response was mailed, 1st Class Postage Prepaid, to the Clerk
of the Court for filing within the Electronic Filing System
this 27th day of April, 2016.

Kevin Johnson

CMC

**FILED**

JUN 2 6 2015

JUDGE AMY ST. EVE
United States District Court

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED STATES OF AMERICA

    v.

KEVIN JOHNSON,
also known as Kevin Olliff

No. 14 CR 390 – 1

Judge Amy J. St. Eve

### PLEA AGREEMENT

1.    This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant KEVIN JOHNSON, and his attorney, MICHAEL DEUTSCH, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A) and Rule 11(a)(2), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.    The indictment in this case charges defendant with conspiring to travel in interstate commerce with the purpose of damaging an animal enterprise, in violation of Title 18, United States Code, Section 43(a)(2)(C), and traveling in interstate commerce for the purpose of damaging an animal enterprise, in violation of Title 18, United States Code, Sections 43(a) and 43(b)(2)(A).

3.    Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charge to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count One, which charges defendant with conspiring to travel in interstate commerce with the purpose of damaging an animal enterprise, in violation of Title 18, United States Code, Section 43(a)(2)(C).

### Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

Beginning no later than on or about August 5, 2013, and continuing until on or about August 15, 2013, in the Northern District of Illinois, and elsewhere, Kevin JOHNSON and his co-defendant, Tyler Lang, conspired with each other, and with others known and unknown, to travel in interstate commerce, and to use and cause to be used a facility of interstate and foreign commerce, for the purpose of damaging and interfering with the operations of an animal enterprise, including Mink Farm A and Fox Farm A, and in connection with that purpose, intentionally damaged and caused the loss of real and personal property (including animals and records) used by an animal enterprise, and real and personal property of a person having a connection to and relationship with an animal enterprise, which offense resulted in economic damage exceeding $10,000, in violation of Title 18, United States Code,

Sections 43(a) and 43(b)(2)(A), all in violation of Title 18, United States Code, Section 43(a)(2)(C).

More specifically, Mink Farm A is located in Morris, Illinois, and is in the business of raising and selling minks to furriers. On August 13, 2014, JOHNSON and Lang vandalized Mink Farm A. Specifically, JOHNSON and Lang spray painted the words "Liberation is Love" on the side of a barn located on Mink Farm A and poured caustic substances over two farm vehicles, causing significant damage to the barn and those vehicles. JOHNSON and Lang also released approximately 2,000 minks from their cages. JOHNSON and Lang had removed portions of the fence surrounding the mink farm in order to facilitate the release of the minks. They also removed and destroyed the breeding cards from the minks' cages, which identified their breed and are required for the subsequent sale of the minks to a furrier. Of the 2,000 released minks, approximately 600 died or were never recovered. The remaining minks lost their resale value because the breeding cards were removed and destroyed.

In the weeks leading up to the attack on Mink Farm A, JOHNSON and Lang drove together from California to Illinois, traveling with the purpose of damaging Mink Farm A and other animal enterprises. Along the way, JOHNSON and Lang stopped in various states, including Wisconsin, where they purchased materials with which to commit the vandalism, such as aircraft paint remover.

On August 15, 2013, JOHNSON and Lang were stopped by local police officers in Woodford County, Illinois. The stop occurred approximately ninety miles

from Mink Farm A and only approximately eight miles from Fox Farm A. At the time they were stopped, JOHNSON and Lang were headed in the direction of Fox Farm A, a farm in the business of breeding and then selling fox to furriers.

JOHNSON and Lang were driving to Fox Farm A in order to damage it. To facilitate the vandalism of Fox Farm A, JOHNSON and Lang had equipment in their car, including bottles of muriatic acid, a bottle of aircraft paint remover, spray paint, bolt cutters, a scanner, two Motorola walkie-talkies, computers, several books regarding tactics to avoid law enforcement, maps, rubber gloves, ski masks, and vehicle license covers for the State of Iowa.

As a result of the vandalism JOHNSON and Lang committed at Mink Farm A, the mink farmers lost between $120,000 and $200,000, which includes the physical damage to the property, the replacement cost for the minks, and the lost profits from the farm's inability to sell the minks at their fair value.

### Maximum Statutory Penalties

7.     Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.     A maximum sentence of 5 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b.     In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

### Sentencing Guidelines Calculations

8.    Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9.    For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.    **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2014 Guidelines Manual.

b.    **Offense Level Calculations**.

i.    The base offense level is 6, pursuant to Guideline § 2B1.1(a)(2).

ii.    Because the resulting loss amount is more than $120,000, but less than $200,000, the base offense level is increased by 10, pursuant to Guideline § 2B1.1(b)(1)(F).

iii.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of

5

Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

        iv.      In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

        c.      **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 13 and defendant's criminal history category is V. While defendant agrees that his criminal history category is correctly calculated as a category V, defendant intends to argue at sentencing that his criminal history category substantially overstates the seriousness of his criminal history and will request a sentence below the guidelines range as a result:

        i.      On or about March 13, 2008, defendant was convicted of burglary in the Circuit Court of Los Angeles, and sentenced to 16 months'

6

imprisonment. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this conviction.

ii.     On or about December 4, 2008, defendant was convicted of misdemeanor terrorist threats and burglary in the Circuit Court of Santa Barbara, and sentenced to 63 days' jail and 60 months' probation. Pursuant to Guideline § 4A1.1(b), defendant receives two criminal history points for this conviction.

iii.    On or about November 9, 2010, defendant was convicted of stalking in the Circuit Court of Santa Monica, and sentenced to 3 years' imprisonment. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this conviction.

iv.    On or about November 9, 2012, defendant was convicted of burglary in the Circuit Court of Glendora, and sentenced to 16 months' imprisonment. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this conviction.

v.     On or about January 14, 2014, defendant was convicted possession of burglary tools in the Circuit Court of Woodford County, Illinois, and sentenced to 30 months' imprisonment. Pursuant to Guideline § 4A1.2(a), because this conviction is part of the instant offense, defendant receives zero criminal history points for this conviction.

d.     **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 13, which, when combined with the anticipated criminal history category of

7

V, results in an anticipated advisory sentencing guidelines range of 30 to 37 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

      e.     Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

      10.     Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to

withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11.    Each party is free to recommend whatever sentence it deems appropriate.

12.    It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.    Regarding restitution, defendant acknowledges that the total amount of restitution owed to Mink Farm A is approximately $200,000, minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant to make full restitution in the amount outstanding at the time of sentencing.

14.    Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

15.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16.     Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

17.     After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining count of the indictment as to defendant.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

18.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 14 CR 390.

19.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other

10

federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Conditional Plea of Guilty

20.     The government agrees that defendant's plea of guilty is entered pursuant to Fed. R. Crim. P. 11(a)(2). Pursuant to that Rule, the parties agree that defendant, with the consent of the Court, may enter a conditional plea of guilty, reserving his right to appeal the Court's Order of March 5, 2015, denying defendant's motion to dismiss. Only in the event of a reversal of that decision will defendant be permitted to withdraw his plea. The government does not consent to an appeal on any other pretrial issue, and defendant reserves the right to appeal only the identified pretrial ruling and any issues relating to sentencing. Defendant acknowledges that in the event of a reversal of the Court's order denying the motion to dismiss, the government may reinstate and prosecute any charges against defendant, including but not limited to the charges to which he is pleading guilty under this Agreement. Defendant understands that the Court decides whether or not to approve the entry of this conditional plea under Fed. R. Crim. P. 11(a)(2). If the Court refuses to accept the conditional term of this Agreement, this Agreement shall be null and void.

### Waiver of Rights

21.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

11

a.     **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering

12

each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b.     **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty, the Court's Order of March 5, 2015, referenced above, and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

22.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights

13

specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

23.   Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

24.   Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

25.   For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the

disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

26.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

27.     Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

28.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

29.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further

15

understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

30. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

31. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

16

32.    Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _____ 6-26-15

_____
ZACHARY T. FARDON
United States Attorney

_____
BETHANY K. BIESENTHAL
Assistant U.S. Attorney

_____
KEVIN JOHNSON
Defendant

_____
MICHAEL DEUTSCH
Attorney for Defendant

17

LEGAL MAIL

11/17/2016

METROPOLITAN CORRECTIONAL CENTER
71 W. VAN BUREN STREET
CHICAGO, IL 60605

The enclosed letter was processed through special mailing procedures for forwarding to yo
This letter has neither been opened nor inspected. If the writer raises a question or proble
over which this facility has jurisdiction, you may wish to return the material for furth
information or clarification. If the writer encloses correspondence for forwarding to anoth
addressee, please return the enclosure to the above address.

Date: 04-28-2016

LEGAL

LEGAL

IF RETURNED TO SENDER, OPEN ONLY IN PRESENCE OF INMATE.

LEGAL
MAIL
SENT
4/27/2016

CLERK OF THE COURT
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT IL,
PAUL FINDLEY FEDERAL BUILDING AND US    SPRINGFIELD DIVISION
600 E MONROE ST ROOM 151                COURTHOUSE
SPRINGFIELD, IL 62701

CHICAGO, IL 60605





