UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN JOHNSON | ) | |
| | ) | |
| vs. | ) | No.   16 CV 04620 |
| | ) | Honorable Amy J. St. Eve |
| UNITED STATES OF AMERICA | ) | |
| | ) | |

**GOVERNMENT'S RESPONSE TO JOHNSON'S
MOTION FOR RETURN OF PROPERTY**

On April 5, 2016, and again on May 2, 2016, Kevin Johnson, acting *pro se*, filed a motion, pursuant to Federal Rule of Criminal Procedure 41(g), for return of property seized pursuant to a search conducted on his vehicle.   The government objects to defendant's motion as moot.[1]   In further support, the government states as follows:

---

1   Mr. Johnson filed the instant motion as a civil matter and initially argued that the Central District of Illinois had venue.   While there is some conflict over whether a Rule 41(g) motion should be filed in the pending criminal proceeding or as a civil matter, and there is some conflict over appropriate venue, because the evidence is held in the custody of the Northern District of Illinois, the government does not object resolving the instant motion before this Court and captioned as a civil case.   *See e.g., United States v. Taylor*, 975 F.2d 402 (7th Cir. 1992).

## BACKGROUND

On the night of August 13, 2013, a mink farm located in Morris, Illinois was vandalized. Over 2,000 mink were released from their cages. Prior to the vandalism, each cage was designated with a card that indicated from which breed the mink came. During the vandalism, the cards were removed from the cages and some were torn into pieces. The rest were apparently removed from the farm. The barn was spray painted with red paint and the words, "Liberation is Love." Two farm trucks were damaged after an acidic substance was poured over them. The cages and fences surrounding the property also were damaged, appearing to have been pulled up from the ground.

In an attempt to recoup some of the loss, the farmers, along with assistance from law enforcement, recovered approximately 1,600 of the mink. The remaining mink died or were never recovered. Even for the recovered mink, however, the farmers were harmed in that they were unable to determine the original breed for re-sale.

The next morning, August 14, 2013, defendant and Lang were pulled over by a police officer with the Woodford County Sheriff's Office. The area in which defendant and Lang were pulled over was approximately 90 miles from the mink farm that had been vandalized the night before. When stopped, the vehicle was approximately eight miles from a fox farm and was headed in its direction.

At the time of the traffic stop, Lang was driving the vehicle and Johnson was seated in the passenger seat. However, both Lang and Johnson informed the officer that Johnson was the owner of the vehicle. Both Lang and Johnson further informed the officer that they were from the Los Angeles area, which also was confirmed by database queries. Lang and Johnson gave

conflicting accounts as to where they had been and where they were going, but both claimed that they were on a road trip visiting various friends.

Ultimately, a search warrant was obtained to search the vehicle. While the search warrant was authorized by a Magistrate Judge in the Central District of Illinois, and the search was conducted there, evidence recovered from the search was provided to FBI agents in the Northern District of Illinois.

Agents and officers recovered the following items that connected Lang and Johnson to the mink farm vandalism:

- A flash drive which contained two known and widely circulated publications amongst animal rights extremists. Agents reviewed the publications, which revealed that the authors of the publications advocated the release of minks and foxes from fur farms and also advocated vandalism of the farms. The publications set forth instructions on how to accomplish the release of the animals, including by suggesting the use of new bolt cutters for each act of vandalism, to turn off cellular telephones leading up to and during the act of vandalism, and to obtain police radio scanners to detect law enforcement presence in the area.

- The publications recovered from the vehicle also included lists of mink and fox farms throughout the country. Both the mink farm in Morris, Illinois, and the fox farm in the Central District of Illinois were included in the publications.

- Consistent with the publications, there were multiple cutting tools, bolt cutters, and smaller snips which appeared to be new that were recovered from the vehicle.

- Cell phones were recovered and analyzed. Analysis of that cell site information revealed that, consistent with the publications' directives, the cell phones were turned off in the days leading up to the mink farm vandalism.

- A radio frequency scanner was recovered. A search of the radio frequency scanner recovered from the vehicle determined that the radio had been set to detect radio frequencies used by law enforcement in both Morris, Illinois, and Woodford County, Illinois. According to online information about the radio scanner, the scanner does not automatically pick up radio traffic in the area. Rather, the scanner must be manually programmed to a particular area in order to receive the radio scans from that area.

- Items consistent with committing a vandalism also were recovered, including, but not limited to, rubber gloves, ski masks, ball caps, bolt cutters, and miscellaneous cutters.

- Animal hair was observed in the vehicle and on items removed from the vehicle.

- One bottle labeled "aircraft paint remover."

A number of the items recovered from the car were sent to FBI labs for further analysis. Based on that analysis, it was determined that some of the animal hair recovered from the clothing and other items found in the car was mink fur. It also was determined that aircraft paint remover was consistent with that used to damage the farm vehicles on the property.

Based almost exclusively on the evidence recovered during the search of Mr. Johnson's vehicle, on July 8, 2014, Kevin Johnson, together with his co-defendant Tyler Lang, was charged by indictment with two counts of damaging an animal enterprise, in violation of Title 18, United States Code, Section 43. 14 CR 390, R.1. On June 26, 2015, Johnson entered a conditional plea of guilty. 14 CR 390, R. 124. On February 29, 2016, this Court entered a judgment, committing Mr. Johnson to the custody of the Bureau of Prisons for a period of 36 months. 14 CR 390, R. 150.

Yesterday, Lang and Mr. Johnson filed a consolidated appeal with the Seventh Circuit. Nos. 16-1459, 16-1694, R. 8. In their consolidated brief, Lang and Johnson argue that the statute with which they were charged is unconstitutional. Neither Lang nor Johnson assert any arguments concerning their sentence. Because neither will be in federal custody after their appeal is decided, neither will have any continued rights to challenge their sentence under 28 U.S.C. § 2255.

In anticipation of Mr. Johnson's imminent release from custody, Mr. Johnson requests that the government return the property recovered during the search of his vehicle, pursuant to Federal Rule of Criminal Procedure 41(g). As set forth below, the government will return a number of the items seized from Johnson's vehicle. However, the government objects to the return of items that would be used by the government as evidence in establishing Johnson or Lang's connection to the vandalism until the pending appeal is resolved and the government has determined that it no longer has any evidentiary need for the items.

## ANALYSIS

"A person aggrieved by an unlawful search and seizure or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). The government may retain evidence seized pursuant to a search warrant where retention of that evidence is reasonable, *i.e.*, where it is needed for some evidentiary purpose: "If the United States has a need for the property in an investigation or prosecution, its retention of the property generally is reasonable. But, if the United States' legitimate interests can be satisfied even if the property is returned, continued retention of the property would become unreasonable." *In re Search of the Office of Tylman*, 245 F.3d 978, 980 (7th Cir. 2001) (internal quotations omitted). In addition, the moving party must establish that "being deprived of actual possession of the seized property causes 'irreparable injury,' and must be otherwise without adequate remedy at law." *In re Search of Kitty's East,* 905 F.2d 1307, 1371 (10th Cir. 1990).

Here, the government's retention of the property seized from Mr. Johnson's vehicle is reasonable given that the property has significant evidentiary value and an appeal is currently pending. *See In re Search of 2847 E. Higgins Rd.,* 390 F.3d 964, 967 (7th Cir. 2004) (the government's retention of records is reasonable where they constitute evidence). While Mr.

Johnson correctly notes that the substance of his appeal relates only to the constitutionality of the charging statute, that fact does not end the analysis. As set forth in the factual background above, the evidence recovered from Mr. Johnson's vehicle forms the basis of the charges against Johnson. Without it, the government would not have been able to prove either Mr. Johnson or Lang's guilt of the charges. For example, the bolt cutters and chemical substances were the equipment that was used to both commit the vandalism at the mink farm and that was going to be used to vandalize the fox farm. The clothing and masks were submitted to the lab for analysis and determined to contain mink hair, which directly connected Johnson and Lang to the vandalism. The publications and books were used to learn how to commit the crime and served as guides. The computers and flash drives were analyzed and found to contain information about the crime, as well as Mr. Johnson's past history in overstepping the boundaries of lawful advocacy. And the handwritten notes were used to establish Johnson's connection to the animal rights movement and were argued as signs of his dangerousness at his sentencing hearing. In sum, the evidence recovered from the car was crucial to the prosecution and sentencing of both Lang and Mr. Johnson.

The government's continued retention of that evidence is reasonable, given that the appeal is still pending. *See United States v. Thompson*, No. 04 CR 464, 2009 WL 235356, at *3 (Jan. 30, 2009, N.D. Ill) (noting that a resolution to a pending 41(g) motion waited until a pending appeal was resolved); *United States v. White*, 582 F.3d 787, 806 (7th Cir. 2009 (noting that district court denied 41(g) motion as premature until appeal is final). If the pending appeal is successful, the government's convictions against Lang and Johnson will be overturned (including this Court's restitution orders). If that were to happen, the government would have other avenues with which to seek a successful prosecution – either by charging Johnson and Lang

under a separate statute or referring the matter to the state for additional prosecution. While it is certainly not definite that the government would seek additional charges, that decision has yet to be made and would not be made until the Seventh Circuit rules on the pending appeal.[2] The government's retention of the evidence for that short period of time is reasonable to make that decision.

The reasonableness of the government's retention of the property is further evidenced by what the government has already returned. During the prosecution of Mr. Johnson, the undersigned was contacted by Johnson's mother concerning the return of his vehicle itself. Once the undersigned confirmed that all necessary testing had been completed on the vehicle, the undersigned arranged for its prompt return to Mr. Johnson. In addition, now that the prosecution of Johnson and Lang is substantially complete, the government is in the process of returning that property for which there was limited evidentiary value.[3] Given that the clothing and a number of other items were sent to the lab for testing, the process of returning the items takes some time. Agents with the FBI have requested the return of the items from the lab. Once they receive those items, they will separate the items and make them available for

---

2    A separate prosecution would not run afoul of the Double Jeopardy Clause, so long as the newly charged crime included elements different than those necessary to prove the dismissed claims. In *Blockburger v. United States*, 284 U.S. 299 (1932), the Supreme Court set forth the test for determining whether two statutory provisions constitute separate offenses: "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304.

3    The government is in a position to the return the following items: books entitled "I Love Female Orgasms," "Amazon Autopilot," and "Map Reading, and Land Navigation;" 8/7/13 Newspaper Juice; magnet of Vermont state; Vasque green shoes; one pair green boxer briefs; Chico bag; one pair black socks; reflective vest; "Sea to Summit" socks; simple shoes, size 10; miscellaneous clothes and bag (assuming no mink hair was recovered from the clothes); Brown Carhartt stocking cap; clothing, shoes, from plastic bags (with the same caveat); antenna in plastic bag; midland surveillance headsets; bottle of bear deterrent; four headlamps; stainless steel measuring cup; miscellaneous backpacks and trash bags; iPod; Colostron "Retrace Delux;" and Vivitar black digital camera.

immediate return. The other items listed in the government's footnote that are currently in the FBI's possession are also available for immediate return.[4]

Finally, given that the government has returned Mr. Johnson's vehicle, and is in the process of returning his clothing, Mr. Johnson cannot establish that he is aggrieved as a result of the government's continued (and brief) retention of the remaining items. As Mr. Johnson argues in his motions, he will be released shortly and needs clothing and other personal items to use post-custody. Those items are being returned to Mr. Johnson. The remaining items -- bolt cutters, books concerning surveillance and terrorism, publications concerning the animal rights movement, radio frequency scanner, etc. -- are not the types of things needed by Mr. Johnson to assist in his reentering the community.

## CONCLUSION

For the reasons set forth above, the government requests that this Court deny Johnson's motion as moot.

Respectfully submitted,

ZACHARY T. FARDON
United States Attorney

By:     /s/ Bethany K. Biesenthal
        BETHANY K. BIESENTHAL
        Assistant United States Attorney
        219 South Dearborn Street
        Chicago, Illinois 60604
        (312) 886-7629

---

4    As this Court is aware, both Johnson and Lang were present in the vehicle that was pulled over and searched and the evidence recovered during the search of the vehicle was used against both. The government cannot say with certainty the true owner of any of the more benign items found in the vehicle – the clothing, shoes, undergarments, camping equipment, etc. Therefore, the government will provide Mr. Lang's counsel with a copy of the instant filing and provide him with 21 days within which to claim ownership interest in any of the items before tendering them to Mr. Johnson.

## CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following documents:

Government's Response To Johnson's Motion For Return Of Property

were served pursuant to the district court's ECF system as to ECF filers, if any, and were sent by first-class mail on May 10, 2016, to the following non-ECF filers:

Kevin Johnson

#47353-424

Metropolitan Correctional Center – Chicago

71 Van Buren Street

Chicago, Illinois 60605

 /s/ Bethany K. Biesenthal
BETHANY K. BIESENTHAL
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-7629

9